**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE NO.: 6:26-cv-2276

PAGONA ALFORD,

Plaintiff,

v.

MAGICAL CRUISE COMPANY, LIMITED
d/b/a DISNEY CRUISE LINE,

Defendant.
______________________________________/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, PAGONA ALFORD, by and through undersigned counsel, sues Defendant, MAGICAL CRUISE COMPANY, LIMITED d/b/a DISNEY CRUISE LINE, and alleges:

## PARTIES

1. Plaintiff, PAGONA ALFORD, was and is a resident of and domiciled in the State of Georgia and resides in Alpharetta, Georgia.

2. At all times material, Defendant, MAGICAL CRUISE COMPANY, LIMITED d/b/a DISNEY CRUISE LINE, was and is a corporation organized under the laws of England and Wales, registered to transact business in Florida under Document No. F96000005618, and maintains its principal United States place of business in Osceola County, Florida, located at 210 Celebration Place, Celebration, Florida 34747. Defendant may be served through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

3. At all times material, Defendant owned, operated, managed, maintained, and controlled the passenger cruise ship known as the Disney Dream, and acted through its officers,

employees, crewmembers, servants, and actual or apparent agents acting within the course and scope of their employment or agency.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332 because this is an action for damages exceeding $75,000.00, exclusive of interest and costs, and the parties are completely diverse.

5. This Court also has jurisdiction pursuant to 28 U.S.C. § 1333(1) because this is a civil case of admiralty or maritime jurisdiction arising from personal injuries sustained by a paying passenger aboard a cruise vessel on navigable waters.

6. Because an independent basis of jurisdiction exists under 28 U.S.C. § 1332, Plaintiff does not designate this action as an admiralty or maritime claim under Federal Rule of Civil Procedure 9(h) and demands trial by jury.

7. Venue in the United States District Court for the Middle District of Florida, Orlando Division, is proper pursuant to the forum-selection clause contained in the passenger ticket contract between Plaintiff and Defendant, which designates this District and Division to the exclusion of all other fora.

8. At all times material, Defendant, personally or through its agents, servants, and/or employees:

a. Operated, conducted, engaged in, and/or carried on a business venture in the State of Florida and in Osceola County, Florida;

b. Maintained its principal United States place of business in Osceola County, Florida;

c. Was engaged in substantial business activity in the State of Florida;

d. Operated vessels and provided cruise transportation to paying passengers in navigable waters, embarking from and disembarking at Port Everglades, Florida;

e. Committed one or more acts as set forth in Fla. Stat. §§ 48.081, 48.181, and 48.193, which submit Defendant to the jurisdiction and venue of this Court, and is further subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1333; and

f. Committed acts and omissions giving rise to this action, in whole or in part, in the State of Florida.

9. All conditions precedent to the institution of this action have been satisfied, have occurred, or have otherwise been waived or excused, including any pre-suit notice required by the passenger ticket contract. Plaintiff reported the incident to Defendant aboard the vessel on the date it occurred; Defendant opened Claim No. DCLG2025006153 and acknowledged Plaintiff's claim in writing on November 23 and 24, 2025 and again on December 19, 2025; Plaintiff reported her bodily injuries and transmitted photographs of them to Defendant on December 2, 2025; and Plaintiff served a written pre-suit demand on March 5, 2026.

10. This action is commenced within one year after the date of the event upon which it is based and within one year after termination of the subject cruise. To the extent the passenger ticket contract purports to limit Defendant's liability for personal injury or emotional distress caused by its own negligence, such provisions are void under 46 U.S.C. § 30527.

## GENERAL ALLEGATIONS

11. On or about November 17, 2025, Plaintiff, PAGONA ALFORD, was lawfully and legally onboard the Disney Dream as an invitee and paying passenger with the actual and/or constructive consent of Defendant, together with her husband and their two children, then ages five and three.

12. Plaintiff was a passenger on a five-night "Very Merrytime Bahamian" cruise aboard the Disney Dream departing Port Everglades, Florida on November 17, 2025 and returning on November 22, 2025, under Reservation No. 43813351, at a total fare of $2,291.84.

13. At all times material, Plaintiff and her family were assigned to and occupied Stateroom No. 6640, a Category 07A Deluxe Oceanview Stateroom with Navigator's Verandah on Deck 6 of the Disney Dream.

14. At all times material, Defendant exclusively inspected, cleaned, serviced, maintained, and controlled Stateroom 6640, including its mattresses, bed frames, headboards, bedding, furnishings, carpeting, wall and trim junctions, and under-bed luggage storage areas. Plaintiff had no ability to inspect, treat, or remediate the stateroom before it was assigned to her, and no means of learning its condition, complaint history, or infestation history.

15. The Disney Dream is a Dream class cruise ship operated by Defendant. Defendant's protocols for the inspection, maintenance, pest control, and routine cleaning of passenger staterooms, including the subject stateroom, are substantially similar - if not virtually identical - across its fleet.

16. During the early morning hours of November 21, 2025, Plaintiff awoke to attend to her three-year-old daughter. Upon returning to her bed in Stateroom 6640 and pulling the bedding over herself, Plaintiff observed a live bed bug crawling on the fitted sheet.

17. Plaintiff photographed the live insect, then captured, killed, and preserved the specimen in a tissue.

18. Plaintiff immediately telephoned Defendant's Guest Services department and reported the presence of a live bed bug in her bed.

19. Defendant dispatched a housekeeping crewmember, identified to Plaintiff as "Marianne," who took possession of the specimen for examination and, upon returning to the stateroom, confirmed to Plaintiff that it was a bed bug.

20. Defendant thereafter determined that Stateroom 6640 required chemical treatment, that Plaintiff and her family had to vacate it immediately, and that the family's clothing, personal effects, and luggage required laundering and sanitization.

21. Actual notice exists where a defendant recognizes the need to take corrective action. See Sorrels v. NCL (Bahamas) Ltd., 796 F.3d 1275, 1288–89 (11th Cir. 2015). Defendant's decision to chemically treat the stateroom, displace its occupants, and launder and sanitize their belongings is the type of corrective action evincing actual knowledge of the dangerous condition.

22. Bed bugs are passively transported between rooms and vessels in and upon luggage, clothing, and bedding. This mechanism of spread is well known to Defendant and to the cruise and hospitality industries.

23. Plaintiff's family's luggage had been stored directly beneath the bed in which the live bed bug was found - a known and foreseeable bed bug harborage location.

24. Notwithstanding its actual knowledge of the bed bug and of the risk of passive transport, Defendant instructed Plaintiff to pack her family's belongings into that same under-bed luggage, to transport it to a different stateroom, and to unpack it there, and represented to Plaintiff that this was Defendant's established protocol for relocating guests following a confirmed bed bug report.

25. Plaintiff objected repeatedly and specifically, identifying to Defendant's crewmembers the obvious risk that doing so would spread contamination. Defendant dismissed her objections.

26. Plaintiff requested clean, uncontaminated replacement luggage from Guest Services. Defendant denied the request. Plaintiff escalated to a Guest Services manager, who again refused. Plaintiff then requested onboard credit sufficient to purchase comparable luggage from the vessel's gift shop, and Defendant refused that request as well.

27. Only after prolonged protest, and only after Plaintiff escalated to Defendant's Head of Guest Services and Head of Housekeeping, did Defendant furnish replacement bags - fewer in number and materially smaller than Plaintiff's own - compelling Plaintiff to transport contaminated luggage into her home.

28. While Plaintiff was still seeking a reasonable contamination-control accommodation, Defendant's crewmembers removed the family's clothing and personal effects from Stateroom 6640 without conducting or permitting any inventory, manifest, or receipt, leaving Plaintiff, her husband, and their two small children with only the garments they were wearing and their swimwear for a period of several hours.

29. Defendant relocated Plaintiff to Stateroom 6614, where the in-room safe was inoperable, requiring Plaintiff to remain in a public corridor holding her family's belongings and travel documents while awaiting repair.

30. When Defendant returned the laundered items, numerous garments had been shrunk, faded, cracked, discolored, and damaged by color bleeding, and embellished items had been destroyed. Additional items that Defendant did not launder were discarded because Defendant provided no means or time to decontaminate them before disembarkation.

31. Multiple pieces of Plaintiff's luggage, together with belongings inside them, were abandoned aboard the vessel because of contamination. Defendant's own personnel acknowledged

onboard that Plaintiff's abandoned luggage was of materially greater value and quality than the replacement bags Defendant furnished.

32. Beginning on or about November 24, 2025, Plaintiff developed raised, swollen welts and inflamed lesions on her abdomen and chest, extending to her breast, in a distribution, morphology, and time course consistent with bed bug bites, accompanied by severe and persistent pruritus that caused Plaintiff to excoriate her skin and draw blood.

33. On December 17, 2025, Plaintiff presented to Steele Dermatology in Alpharetta, Georgia, where her treating dermatologist documented and photographed ongoing skin inflammation, prescribed clobetasol propionate, and directed Plaintiff to take levocetirizine for symptom control.

34. Plaintiff's lesions resolved into persistent post-inflammatory hyperpigmentation of the skin of her abdomen and chest. Because the discoloration failed to resolve, Plaintiff was issued a written treatment proposal on January 20, 2026 for a course of three laser treatments to address the residual pigmentary change.

36. Plaintiff's documented symptoms include uncontrollable worry, depressed mood, impaired concentration, social withdrawal, frequent nightmares, and intrusive recollections of the incident, with functional impairment in her social and relational functioning and in her activities of daily living.

37. Plaintiff's psychological injuries arise not only from the bed bug exposure itself but from Defendant's conduct in dismissing her contamination concerns, refusing her repeated requests for reasonable assistance, and stripping her family of their clothing without inventory.

38. As a direct result of Defendant's acts and omissions, Plaintiff suffered insect bites, itching, swelling, skin lesions, pain, scarring and/or discoloration, loss of sleep, humiliation,

embarrassment, anxiety, emotional distress, loss of enjoyment of the cruise, loss of and damage to personal property, and medical, dermatologic, psychological, and pharmaceutical expenses.

39. Defendant knew or should have known that bed bugs and bed bug infestations can occur in passenger staterooms onboard its vessels, including the Disney Dream, and that bed bugs harbor in mattresses and mattress seams, box foundations, bed frames, headboards, wall and trim junctions, carpet edges, furniture seams, and under-bed luggage storage areas.

40. Defendant knew or should have known that routine inspection, monitoring, cleaning, treatment, and remediation procedures were necessary to identify, prevent, contain, and eradicate bed bug infestations in passenger staterooms and surrounding areas.

41. Bed bugs are obligate blood feeders that pass through five nymphal instars before reaching adulthood, with a complete life cycle from egg to egg spanning approximately four to five weeks under favorable conditions. The presence of a live adult bed bug in an occupied passenger bed is evidence that the insect, or the population from which it originated, had been present aboard the vessel for a period of time sufficient for Defendant, in the exercise of reasonable care, to have discovered it.

42. Defendant knew or should have known of the dangerous condition in Plaintiff's stateroom because:

a. Defendant had actual notice through prior complaints, inspections, reports, and/or crew observations;

b. Defendant had actual notice when Plaintiff reported the live bed bug and Defendant's crewmember examined and confirmed the specimen;

c. Defendant recognized the need for corrective action by chemically treating the stateroom, displacing its occupants, and laundering and sanitizing their belongings; and

d. The condition existed for a sufficient period of time that Defendant, in the exercise of reasonable care, should have discovered and corrected it before Plaintiff and her children were exposed.

43. Upon information and belief, prior to Plaintiff's occupancy of Stateroom 6640, Defendant failed to utilize reasonable inspection, housekeeping, sanitation, monitoring, pest-control, and remediation procedures designed to guard against the presence, spread, and transport of bed bugs in passenger staterooms.

44. Upon information and belief, and based upon publicly available passenger reports and cruise-industry media coverage, Defendant is on notice of prior substantially similar incidents involving passengers encountering bed bugs in passenger staterooms aboard vessels in its fleet, including but not limited to the following:

a. On or about the sailing of July 6, 2025, aboard the Disney Magic, passengers reported bed bugs in the Deck 6 stateroom area, in the vicinity of stateroom numbers in the 6500 series.[1]

b. On or about the sailing of July 13, 2025, aboard the Disney Magic, a passenger reported finding a bed bug in stateroom 6536, on Deck 6, and published a photograph of the insect together with the stateroom number.[2]

---

[1]Cruise Hive, Bed Bugs Allegedly Spotted in Stateroom on Disney Cruise Ship (July 24, 2025), https://www.cruisehive.com/bed-bugs-allegedly-spotted-in-stateroom-on-disney-cruise-ship/181959 (last visited Sept. 30, 2026).

[2]Bedbugs on the Magic, DIS Disney Discussion Forums (DISboards) (thread commenced July 23, 2025), https://www.disboards.com/threads/bedbugs-on-the-magic.3970758/ (last visited Sept. 30, 2026).

c. On or about the sailing of July 20–24, 2025, aboard the Disney Magic, a family of five reported finding a live bed bug in a pull-down bed in their assigned stateroom. Defendant relocated the affected occupants to a stateroom on Deck 6, laundered the clothing from the affected stateroom, and heat-treated the family's luggage. Two days later, the family discovered a second live bed bug in the Deck 6 relocation stateroom, on a backpack that had never been present in the original stateroom. Defendant's housekeeping manager attended the relocation stateroom, personally observed the live insect, photographed it, and disposed of it. Defendant thereafter relocated the family a second time, to Deck 8, and laundered the entirety of the family's clothing at high heat.[3]

d. On or about a 2024 sailing of the Disney Wonder departing San Diego, a passenger reported finding multiple bed bugs in a passenger stateroom, preserving and photographing a specimen, and presenting it to Defendant's guest services personnel, who examined the specimen, confirmed it, and advised that the stateroom would be treated between sailings.[4]

e. On or about a July 2016 Bahamas sailing of the Disney Dream, passengers assigned to a Deluxe Family Oceanview Stateroom reported bed bugs in the pull-down wall bed, resulting in what the passenger estimated to be in excess of one hundred bites

---

[3] Id.; see also Disney Dining, Bed Bug Issue Reported on Disney Cruise Line (July 23, 2025), https://www.disneydining.com/bed-bug-issue-reported-on-disney-cruise-line-theyre-likely-all-over-the-ship-cj1/ (last visited Sept. 30, 2026).

[4] Disney Dining, supra note 3; Disney Fanatic, Unwanted Guests? Travelers Share Alarming Disney Vacation Discovery, https://www.disneyfanatic.com/unwanted-guests-travelers-share-alarming-disney-vacation-discovery-cj1/ (last visited Sept. 30, 2026).

to a nine-year-old child, and reported that Defendant did not respond to the complaint.[5]

f. On or about a February 2013 sailing of the Disney Dream, a passenger reported finding a bed bug on the bed on the first night of the sailing, to which Defendant responded only by changing the linens, and reported finding a second bed bug on the same bed on the third night of the sailing.[6]

45. The July 2025 reports aboard the Disney Magic are substantially similar to the subject incident in material respects. They involved the same operator, the same fleet, and the same Deck 6 passenger accommodation area in which Plaintiff was berthed; they involved the discovery of a live bed bug in a passenger sleeping surface; and they occurred approximately four months before Plaintiff's sailing.

46. Of particular significance, in the July 2025 incident aboard the Disney Magic, Defendant laundered the affected passengers' clothing and heat-treated their luggage before relocating them, and, when contamination nevertheless spread to the relocation stateroom, laundered the entirety of the family's clothing at high heat. Defendant thus knew, four months before Plaintiff sailed, both that decontamination of luggage and clothing is necessary before relocating guests following a confirmed bed bug report, and that relocating guests without such decontamination foreseeably transfers the infestation to the replacement stateroom. Defendant nevertheless directed Plaintiff to do precisely the opposite, and refused her repeated requests for uncontaminated replacement luggage.

---

[5] BED BUGS!!!, Disney Dream Member Review, Cruise Critic (Bahamas sailing, July 2016), https://www.cruisecritic.com/cruise/disney/disney-dream/reviews/541201 (last visited Sept. 30, 2026).

[6] Bedbug on Disney Dream, DIS Disney Discussion Forums (DISboards) (Feb. 2013), https://www.disboards.com/threads/bedbug-on-disney-dream.3066967/ (last visited Sept. 30, 2026).

47. The July 2025 reports aboard the Disney Magic were the subject of contemporaneous national cruise-industry media coverage. Defendant's management and risk-management personnel therefore knew, or in the exercise of reasonable care should have known, of an active bed bug issue in Deck 6 passenger accommodations within its fleet months before Plaintiff was assigned to Stateroom 6640.[7]

48. Reasonable care in the passenger cruise industry, as publicly acknowledged by other major carriers, includes training stateroom stewards to recognize the presence of bed bugs, conducting recurring inspections of every cabin covering not only beds but curtains, carpeting, and other areas, and laundering bedding at temperatures sufficient to kill bed bugs at all life stages. Defendant failed to employ reasonable measures of this kind with respect to Stateroom 6640.[8]

49. The foregoing enumeration is not exhaustive. Plaintiff is unable to presently identify each prior substantially similar incident because records of such incidents - including pest-control and treatment logs, housekeeping and guest-services reports, stateroom-turnover records, guest complaint records, and prior claim and settlement files - are within Defendant's exclusive possession, custody, and control, and because Defendant customarily resolves such claims subject to confidentiality, which shields the facts and circumstances of prior incidents from publicly available sources. Such incidents are properly the subject of discovery in this action.

---

[7] See Cruise Hive, supra note 1; Disney Dining, supra note 3; Disney Fanatic, supra note 4; Inside the Magic, Guests Report Disturbing Discovery in Disney Rooms and Beyond (July 23, 2025), https://insidethemagic.net/2025/07/disney-bed-bug-problem-cj1/ (last visited Sept. 30, 2026).

[8] Published statements of Carnival Cruise Line and Royal Caribbean International regarding stateroom steward training, recurring cabin inspections covering beds, curtains, and carpeting, and laundering of bedding at 155 degrees Fahrenheit, as reproduced at https://www.disboards.com/threads/bedbugs-on-the-magic.3970758/ (last visited Sept. 30, 2026).

50. The bed bug infestation and Plaintiff's resulting injuries would not in the ordinary course of events have occurred without negligence on the part of Defendant in its inspection and maintenance of the subject stateroom.

51. The bed bug condition in Stateroom 6640 rendered the stateroom unsafe, unsanitary, and unfit for ordinary passenger use.

## COUNT I

## NEGLIGENT FAILURE TO INSPECT, MAINTAIN, AND REMEDY AGAINST DEFENDANT

52. Plaintiff realleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

53. At all times material, Defendant owed Plaintiff a duty to exercise reasonable care under the circumstances, including the duty to maintain the Disney Dream, and its passenger staterooms, in a reasonably safe and sanitary condition.

54. Defendant breached its duty by:

a. Failing to adequately inspect Stateroom 6640 before assigning it to Plaintiff and her family;

b. Failing to inspect the mattress, mattress seams, box foundation, bed frame, headboard, bedding, wall and trim junctions, carpet edges, and under-bed luggage storage area of the subject stateroom;

c. Failing to maintain the stateroom in a reasonably safe and sanitary condition;

d. Failing to implement, supervise, and enforce reasonable pest inspection, monitoring, and eradication procedures;

e. Failing to discover, isolate, treat, and remediate the bed bug condition;

f. Failing to remove the stateroom from service before assigning it to Plaintiff;

g. Failing to adequately train and supervise crewmembers in the detection, reporting, containment, and eradication of bed bugs;

h. Failing to inspect adjacent staterooms and nearby areas for the migration or spread of bed bugs;

i. Failing to investigate and act upon prior substantially similar complaints aboard the Disney Dream and other vessels in Defendant's fleet; and

j. Otherwise failing to exercise reasonable care under the circumstances.

55. The dangerous condition existed for a sufficient period of time such that Defendant knew, or in the exercise of reasonable care should have known, of its existence, through reasonable inspections, housekeeping and maintenance procedures, crew reports, prior complaints, and/or its own pest-control and remediation protocols.

56. The foregoing acts and omissions caused and/or contributed to Plaintiff's injuries because the incident would not have occurred but for Defendant's failure to reasonably inspect, maintain, sanitize, treat, remediate, and remove the stateroom from passenger use.

57. As a direct and proximate result of Defendant's negligence, Plaintiff suffered bodily injury, pain and suffering, mental anguish, emotional distress, scarring and/or discoloration, loss of capacity for the enjoyment of life, medical expenses, and property loss, all of which are either permanent or continuing in nature and which Plaintiff will suffer into the future.

WHEREFORE, Plaintiff, PAGONA ALFORD, demands judgment against Defendant, MAGICAL CRUISE COMPANY, LIMITED d/b/a DISNEY CRUISE LINE, for compensatory damages, costs, pre-judgment interest where allowed by law, trial by jury, and all other relief this Court deems just and proper.

## COUNT II

## NEGLIGENT POST-NOTICE RESPONSE AND FAILURE TO CONTAIN A KNOWN HAZARD AGAINST DEFENDANT

58. Plaintiff realleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

59. This Count arises from Defendant's conduct after Defendant acquired actual knowledge of the bed bug in Plaintiff's stateroom, and does not depend upon proof of Defendant's pre-incident notice.

60. Once Defendant's crewmember examined the specimen and confirmed it to be a bed bug, Defendant had actual knowledge of a contamination hazard in an occupied passenger stateroom, and thereupon owed Plaintiff a duty to exercise reasonable care in responding to that hazard, including a duty to take reasonable measures to prevent the further spread of contamination to Plaintiff's person, her family's belongings, her replacement stateroom, and her home.

61. Defendant breached that duty by:

a. Directing Plaintiff to pack her family's belongings into luggage stored directly beneath the bed in which a live bed bug had just been found, and to transport and unpack that luggage in a second stateroom;

b. Representing that such a procedure was Defendant's established protocol, when it is contrary to accepted contamination-control practice and foreseeably spreads infestation;

c. Dismissing Plaintiff's repeated and specific objections to that instruction;

d. Refusing Plaintiff's repeated requests for clean, uncontaminated replacement luggage, and her alternative request for onboard credit to purchase replacement luggage;

e. Furnishing replacement bags fewer in number and materially smaller than Plaintiff's own, compelling Plaintiff to transport contaminated luggage into her home;

f. Removing the family's clothing and personal effects without any inventory, manifest, or receipt;

g. Depriving Plaintiff, her husband, and their two young children of clothing, including undergarments, for an extended period;

h. Laundering Plaintiff's property in a manner that shrank, faded, cracked, discolored, and destroyed it, and failing to provide any means or opportunity to decontaminate items Defendant did not launder;

i. Failing to adopt, implement, enforce, or train personnel in a reasonable contamination-control protocol governing guest relocation following a confirmed bed bug report; and

j. Otherwise failing to exercise reasonable care under the circumstances after acquiring actual notice of the hazard.

62. Defendant's post-notice conduct caused harm independent of and in addition to the harm caused by the bed bug exposure itself, including the contamination and consequent loss of Plaintiff's luggage and personal property, the destruction of her family's clothing, her continuing fear of having transported an infestation into her home, and a substantial portion of the psychological injury for which she has required and continues to require professional treatment.

63. As a direct and proximate result of Defendant's negligence, Plaintiff suffered mental anguish, emotional distress, aggravation of her physical injuries, inconvenience, loss of capacity for the enjoyment of life, psychological treatment expenses, loss of and damage to personal property, and loss of the use and enjoyment of the cruise for which she paid.

WHEREFORE, Plaintiff, PAGONA ALFORD, demands judgment against Defendant, MAGICAL CRUISE COMPANY, LIMITED d/b/a DISNEY CRUISE LINE, for compensatory damages, costs, pre-judgment interest where allowed by law, trial by jury, and all other relief this Court deems just and proper.

## COUNT III

## NEGLIGENT FAILURE TO WARN AGAINST DEFENDANT

64. Plaintiff realleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

65. At all times material, Defendant had a duty to warn Plaintiff of dangers that were known, or reasonably should have been known, to Defendant in places where passengers are invited to be, including passenger staterooms.

66. The bed bug condition in Stateroom 6640 constituted a dangerous condition that was not open and obvious to Plaintiff and could not have been discovered by her in the exercise of reasonable care, and the pest-control, complaint, inspection, and treatment history of the stateroom was within Defendant's exclusive possession and control.

67. Defendant breached its duty to warn Plaintiff by:

a. Failing to warn Plaintiff that Stateroom 6640 contained, or had a history of, bed bugs or bed bug harborage;

b. Failing to warn Plaintiff that the Disney Dream contained one or more staterooms with bed bug conditions;

c. Failing to communicate known infestation-related information to Plaintiff before or during her occupancy; and

d. Failing to warn Plaintiff, at the time it directed her to repack her belongings into under-bed luggage, of the known risk that doing so would spread contamination to her replacement stateroom, her remaining possessions, and her home.

68. The foregoing acts and omissions caused and/or contributed to Plaintiff's injuries because, had Defendant adequately warned her, Plaintiff would not have occupied, remained in, or slept in the subject stateroom, and would have avoided or materially mitigated the contamination of her property.

69. As a direct and proximate result of Defendant's negligence, Plaintiff suffered bodily injury, pain and suffering, mental anguish, emotional distress, scarring and/or discoloration, loss of capacity for the enjoyment of life, medical expenses, and property loss, all of which are either permanent or continuing in nature.

WHEREFORE, Plaintiff, PAGONA ALFORD, demands judgment against Defendant, MAGICAL CRUISE COMPANY, LIMITED d/b/a DISNEY CRUISE LINE, for compensatory damages, costs, pre-judgment interest where allowed by law, trial by jury, and all other relief this Court deems just and proper.

**COUNT IV**

**NEGLIGENT BAILMENT AND DAMAGE TO PERSONAL PROPERTY AGAINST DEFENDANT (PLED IN THE ALTERNATIVE)**

70. Plaintiff realleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

71. On November 21, 2025, Defendant took actual physical possession and exclusive custody of Plaintiff's clothing, personal effects, and luggage for the stated purpose of laundering and sanitizing them, thereby creating a bailment for mutual benefit and a duty to exercise reasonable care in the custody, handling, processing, and return of the bailed property.

72. Defendant took possession of the property without any inventory, manifest, or receipt; returned it damaged, with garments shrunk, faded, cracked, discolored, and embellishments destroyed; failed to return other property at all; and is unable to account for the property it received.

73. Defendant's failure to return the bailed property in the condition in which it was received gives rise to a presumption of negligence on the part of Defendant as bailee.

74. As a direct and proximate result of Defendant's breach of its duties as bailee, Plaintiff sustained loss of and damage to personal property, including luggage valued at not less than $1,760.00 and the clothing and personal effects itemized in the Personal Property Inventory that Plaintiff submitted to Defendant at Defendant's request.

75. To the extent Defendant contends its liability for loss of or damage to Plaintiff's property is limited by any provision of the passenger ticket contract, any such limitation is inapplicable, unenforceable, or has been waived, including because Defendant's own conduct in taking custody of the property and directing its contamination caused the loss, and because

Defendant's claims representative represented to Plaintiff that her claim would be adjusted outside the contractual property-damage limitation.

WHEREFORE, Plaintiff, PAGONA ALFORD, demands judgment against Defendant, MAGICAL CRUISE COMPANY, LIMITED d/b/a DISNEY CRUISE LINE, for compensatory damages, costs, pre-judgment interest where allowed by law, trial by jury, and all other relief this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable as of right.

Dated: September 30, 2026.

LAW OFFICE OF GRANT I. SCHWARZ, P.A.
2625 Weston Road
Weston, Florida 33331
Telephone: (954) 620-8320
Facsimile: (954) 922-6864
Email: Grant@BedBugLaw.com
Secondary Email: Office@BedBugLaw.com

BY: ***/s/ Grant I. Schwarz***
GRANT I. SCHWARZ, ESQ.
Fla. Bar # 0051541